**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| DOUGLAS RYDALCH, | : | **COMPLAINT** |
| Plaintiff, | : | |
| v. | : | |
| SOUTHWEST AIRLINES, | : | Civil No.: |
| Defendant. | : | Honorable |

COMES NOW the Plaintiff Douglas Rydalch (hereinafter "Mr. Rydalch"), complains of Defendant Southwest Airlines, demands a trial by a jury, and as and for causes of action alleges as follows:

**JURISDICTION**

1. Mr. Rydalch brings this action pursuant to the Family and Medical Leave Act, the Americans with Disabilities Act ("ADA"), as amended, and Title VII of the Civil Rights Act of 1964, as amended, for violations of the Family and Medical Leave Act and for discrimination in employment on the basis of disability. Jurisdiction is specifically conferred on this Court by the FMLA, ADA, Title VII, and by 42 U.S.C.

§ 2000 e (5). Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

## PARTIES

2. Plaintiff Douglas Rydalch is a citizen of the United States and a resident of the State of Utah.

3. Defendant Southwest Airlines (hereinafter "Southwest " or "the company") is an entity which does business in the State of Utah with a principal place of business in the State of Utah in Salt Lake County and which is an "employer" as that term is defined in the laws set forth above.

## STATEMENT OF FACTS

4. On October 23, 1998, Mr. Rydalch began working for Southwest Airlines as a reservation sales agent in its Salt Lake City Reservations Center.

5. During the time Mr. Rydalch worked for Southwest Airlines, he worked many late night, weekend and holiday shifts.

6. During his employment, Mr. Rydalch earned many awards and recognitions, including awards for perfect attendance and agent of the year. Also, he gave excellent customer service. He received over 100 written compliments from customers. During his first six years in Utah, he never used a day of sick leave.

7. On February 29, 2004, Mr. Rydalch agreed to relocate for the benefit of the company to Houston, Texas. Shortly thereafter, he relocated to Houston, Texas, and began working at the company's Houston Reservations Center.

8. In July 2004, Mr. Rydalch was involved in an automobile accident in Houston, Texas. He was rear-ended, which caused severe damage to his back (in the form of a bulging disc and other back injuries).

9. Thereafter, his treating physicians determined that he might experience severe pain in his back at any time.

10. Because Mr. Rydalch had not used sick leave before and needed to use sick leave because of his back injury, Southwest Airlines had to explain to Mr. Rydalch that in order to use his sick leave, he had to have leave pursuant to the FMLA in place. Acting on this directive, Mr. Rydalch applied for FMLA leave and was granted leave pursuant to the FMLA for period of six months in duration.

11. Thereafter, from time to time, every six months or so, Mr. Rydalch applied for leave/renewal of leave under the FMLA for his back condition. The company regularly and routinely granted him such leave under the FMLA.

12. After June 2004, Mr. Rydalch worked in pain and applied to use his pre-approved FMLA leave only when his back pain became too severe for him to

be able to sit, stand and/or walk. At such times, he sought to use his previously approved FMLA leave and was allowed to do so without any adverse consequences.

13. Beginning in approximately February 2007, Mr. Rydalch's supervisor began to question him and hassle him about his using pre-approved FMLA leave and his asking for renewal of such FMLA leave.

14. In February 2007, the company also decided to not renew Mr. Rydalch's request for continued FMLA leave unless he went to a specialist of his choosing. He did go to a specialist of his choosing and the company did renew his FMLA eligibility for another six months.

15. Then, in October 2007, as he tried to renew his FMLA eligibility again, the company required him to attend another consultation, this time with a specialist of his choosing and a specialist chosen by the company. The specialist the company chose was not able to coordinate an appointment with Mr. Rydalch until January 2008.

16. Thus, during the events in December 2007 described below, Mr. Rydalch's status as "eligble for leave" under the FMLA was unknown.

17. In January 2008, Mr. Rydalch did have a consultation with this specialist and the company did agree to renew his FMLA and <u>made such renewal</u>

retroactive to October 2007, thus, covering any absences in December 207 taken due to back pain.

        18. On Saturday, December 22, 2007, Mr. Rydalch flew on Southwest Airlines from Houston to Salt Lake City on a ticket which his wife had purchased for him as a surprise gift for Christmas (which Mr. Rydalch had been unaware of until approximately December 20, 2007). When he flew to Salt Lake City on December 22, 2007, he knew had been scheduled to work in Houston on December 24, 26, and 27, 2007 (he had December 25, 2007 off) and he was planning on returning to Houston on December 24, 2007 to work a shift on December 24, 2007. However, while in the Salt Lake City area on December 22 and 23, 2007, Mr. Rydalch had a flare up of his back condition which caused disabling back pain. Accordingly, while he was in Salt Lake City, he called in sick (pending FMLA approval because he had not yet seen the specialist the company was requiring him to see) for each of the three days he had been scheduled to work in Houston. He called in to the Houston reservations center every day on December 24, 26 and 27, 2007 and informed his supervisor or the reservations center that he would not be able to work his scheduled shift due to his back condition. At the time Mr. Rydalch flew to Salt Lake City, he had every intention of returning to Houston on Monday, December 24, 2007. But due to the flare up of the back condition, he was not able to fly back to Houston until December 27, 2007. On

December 27, 2007, he was still in serious back pain but on that day he flew back to Houston on a paid company ticket to get back to work. He went to work on December 28, 2007. He continued working for Southwest until February 19, 2008.

19. As noted above, Mr. Rydalch pursued the renewal of his FMLA eligibility for the period of October 2007 forward and in January 2008, Southwest Airlines renewed his FMLA leave and made such renewal and reinstatement <u>retroactive to October 2007</u>, thus, covering the days in December 2007 (December 24, 26 and 27) he had been incapacitated and had needed to use FMLA leave.

20. By letter dated January 24, 2008, Aetna approved Mr. Rydalch's request to renew his FMLA edibility for the period of October 12, 2007 to January 23, 2008 with an expected frequency of incapacity from daily activities in the range of eight times a month.

21. Between December 23, 2007 and December 27, 2007, Mr. Rydalch was sick and unable to work. He did not abuse his sick leave during these days.

22. Everyday he used as sick leave between December 23, 2007 and December 27, 2007 was covered by FMLA. He never exceeded his FMLA allotment.

23. Nevertheless, after he used FMLA leave for the days of December 24, 26 and 27, 2007, the company decided to label such action as Mr. Rydalch "abusing his sick leave."

24. As a result of jumping to an erroneous conclusion and deciding that Mr. Rydalch had abused his sick leave and that Mr. Rydalch had used sick leave for a purpose other than that intended and that his absences on those days were not covered by the FMLA, Southwest Airlines discharged Mr. Rydalch from employment. Southwest Airlines did not terminate Mr. Rydalch's employment until February 19, 2008.

25. Mr. Rydalch alleges that such a reason for such adverse employment action is false and pretextual and that such action constitutes interference with his rights under the FMLA and is retaliatory for using FMLA leave.

## FIRST CAUSE OF ACTION
## VIOLATION OF FMLA–INTERFERENCE AND RETALIATION

26. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 25 above.

27. The FMLA, 29 U.S.C. §2612(a)(1), provides:

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period... (D)

28. Mr. Rydalch was eligible for FMLA leave and appropriately and timely requested FMLA leave in a manner which complied with 29 U.S.C. §§ 2612, and 2613 (a) and (b).

29. Although Mr. Rydalch was entitled to use FMLA leave for absences on December 24, 26 and 27, 2007 and did use FMLA leave for such absences on such days and although the company had approved Mr. Rydalch's request for renewed leave under the FMLA so as to cover such absences on such days retroactively, after Mr. Rydalch applied for and sought to use such leave for such days, Southwest Airlines terminated Mr. Rydalch's employment because of his use of such leave for such days.

30. The reason for the termination is not well supported by the facts as to Mr. Rydalch's performance and record of attendance/call-ins.

31. Mr. Rydalch alleges the company's action constitutes interference with his rights under the FMLA and is retaliatory for using FMLA.

32. Mr. Rydalch alleges the company's action is pretextual. He bases this allegation on several factors, including:

(a) as set forth above, during his employment with the company, Mr. Rydalch performed at an excellent level. He had no disciplinary action against him prior to his termination;

    (b) Mr. Rydalch did have a documented serious health condition–namely, degenerative disc disease of the lumbar spine;

    (c) such condition is not predictable and when it occurs, it can be disabling on an intermittent basis;

    (d) when Mr. Rydalch is at home or otherwise inactive, he is sitting around being with family, watching tv and not being very active.  This causes his back to stiffen up;

    (e) the days he missed around Christmas 2007 were missed upper extremity to a very real flare up of his serious health condition and, therefore, covered by FMLA leave;

    (f) the company did not follow company policies on progressive discipline and just cause in handling Mr. Rydalch's situation;

    (g) on information and belief, Mr. Rydalch alleges the company treated him differently and more favorably before he began using FMLA leave than after he began using FMLA leave;

    (h) on information and belief, the company treated Mr. Rydalch differently after he began using FMLA leave compared with how it treated other employees;

     (i)  the company had demonstrated suspicion and hostility towards Mr. Rydalch's repeated efforts to renew his eligibility for FMLA leave and his efforts to access and us such FMLA leave.

  33.  As set forth above, the company interfered with Mr. Rydalch's entitlement to take FMLA leave.

  34.  As set forth above, by engaging in such interference, the company violated the FMLA.

  35.  As set forth above, the company terminated Mr. Rydalch's employment, in part or in whole, because of his actions in applying for and in using FMLA leave.

  36.  As set forth above, the decision to terminate Mr. Rydalch was retaliatory.

  37.  By engaging in the actions and inactions set forth above, the company has violated the FMLA and the non-interference and non-retaliation provisions of the FMLA.

  38.  As set forth above, by engaging in such retaliation, the company violated the FMLA.

  39.  Had the company not terminated Mr. Rydalch' employment, Mr. Rydalch would have been able to return to work before exhausting the FMLA leave to

which he was entitled and he would have been able to continue working for the company.

40. Subsequent to the company's termination of his employment, Mr. Rydalch has not been able to obtain alternate employment and, as a result, he has experienced lost wages, lost benefits, financial distress and other damages.

41. On information and belief, Mr. Rydalch alleges that in response to Mr. Rydalch's needs for and requests for FMLA leave and in spite of the fact that to accommodate such requests would not have caused Southwest Airlines an undue hardship, Southwest Airlines failed to enter into an interactive FMLA dialogue with Mr. Rydalch, failed to grant Mr. Rydalch the FMLA leave he needed and requested, failed to communicate any reasons to Mr. Rydalch as to why it could not or would not respond to his requests, and terminated Mr. Rydalch's employment without advance notice, without warning, without progressive discipline, and without cause, good cause or just cause, and not for legitimate business reasons but for illegitimate and pretextual reasons.

42. Such violations have caused Mr. Rydalch loss, injury and damage, including lost wages and lost benefits, including access to health insurance, retirement plan, flight benefits and other benefits.

43. To redress such violations, Mr. Rydalch has been required to hire an attorney and incur attorney's fees and court costs.

44. Pursuant to 29 U.S.C. § 2617, the company is liable to Mr. Rydalch for all wages, wage increases and employment benefits (health insurance, dental insurance, 401 (k) company match dollar-for-dollar up to 8%, with flight benefits, for self and parents) to which he would have been entitled but for the company's conduct, and which he lost due to the company's violations of the FMLA, prejudgment interest on those losses, and an additional amount as liquidated damages equal to the damages set forth above plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate (including reinstatement).

## SECOND CAUSE OF ACTION
## FAILURE TO ACCOMMODATE

45. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 44 above as if alleged in full herein.

46. Mr. Rydalch is a person with a disability in that he has one or more impairments which substantially limit one or more of his major life activities, has a record of such an impairment and/or Southwest Airlines regarded him as having such an impairment.

47. Mr. Rydalch has one or more impairments, including degenerative disc disease in his back and compromise of the spinal cord.

48. One or more of Mr. Rydalch's impairments substantially limit one or more of his major life activities, including sitting, standing, walking, lifting, bending, twisting, reaching, performing manual tasks, being able to engage in indoor or outdoor recreational activities, sleeping and working.

49. Mr. Rydalch is a qualified individual with a disability in that he was able to perform the essential functions of the job(s) he held or desired at a satisfactory or better level, with or without a reasonable accommodation.

50. Mr. Rydalch duly notified Southwest Airlines of his impairments, disability, restrictions and limitations.

51. On information and belief, Mr. Rydalch alleges that Southwest Airlines treated Mr. Rydalch disparately and adversely because of his disabilities.

52. Mr. Rydalch requested Southwest Airlines to afford him various reasonable accommodations, including allowing him to use leave when needed for his back condition without penalty or punishment.

53. On information and belief, Mr. Rydalch alleges that for Southwest Airlines to have provided Mr. Rydalch with such reasonable accommodations or other alternate, equivalent accommodations would not have caused Southwest Airlines an undue hardship.

54. On information and belief, Mr. Rydalch alleges that in response to Mr. Rydalch's needs for and requests for reasonable accommodations and in spite of the fact that to accommodate such requests would not have caused Southwest Airlines an undue hardship, Southwest Airlines failed to enter into an interactive ADA reasonable accommodation dialogue with Mr. Rydalch, failed to grant Mr. Rydalch the accommodations he needed and requested, failed to offer alternative, equivalent reasonable accommodations to Mr. Rydalch, failed to communicate any legitimate reasons to Mr. Rydalch as to why it could not or would not respond to his requests or offer any alternative, equivalent accommodations, and terminated Mr. Rydalch's employment, in part or in whole, because of his disability and requests for accommodation without advance notice, without warning, without progressive discipline, and without cause, good cause or just cause, and not for legitimate business reasons but for illegitimate and pretextual reasons.

55. Such disparate and adverse treatment, failures to accommodate, actions, inactions and adverse actions constitute violations of the Americans with Disabilities Act.

56. Such failures and violations have caused Mr. Rydalch loss, injury and damage of various types, including lost wages and benefits, emotional distress, mental anguish, pain and suffering and other loses, injuries and damages.

57. To redress such violations, Mr. Rydalch has been required to hire an attorney and incur attorney's fees and court costs.

58. Pursuant to the ADA, the company is liable to Mr. Rydalch for all wages, wage increases and employment benefits (health insurance, dental insurance, 401 (k) company match dollar-for-dollar up to 8%, with flight benefits, for self and parents) to which he would have been entitled but for the company's conduct, and which he lost due to the company's violations of the ADA, prejudgment interest on those losses, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate (including reinstatement).

### THIRD CAUSE OF ACTION
### RETALIATION

59. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 58 above as if alleged in full herein.

60. By engaging in requesting FMLA leave, applying for renewal of eligibility for FMLA leave and using FMLA leave, and by requesting reasonable accommodations, Mr. Rydalch was engaged in protected activity.

61. Subsequent to Mr. Rydalch's engaging in protected activity, the company took adverse employment actions against Mr. Rydalch including terminating his employment.

62. A causal connection exists between Mr. Rydalch's engaging in protected activity and the company taking adverse employment actions against him.

63. Such disparate and adverse treatment, failures to accommodate, actions, inactions and adverse actions constitute violations of the Americans with Disabilities Act.

64. Such failures and violations have caused Mr. Rydalch loss, injury and damage of various types, including lost wages and benefits, emotional distress, mental anguish, pain and suffering and other loses, injuries and damages.

65. To redress such violations, Mr. Rydalch has been required to hire an attorney and incur attorney's fees and court costs.

66. Pursuant to the ADA, the company is liable to Mr. Rydalch for all wages, wage increases and employment benefits (health insurance, dental insurance, 401 (k) company match dollar-for-dollar up to 8%, with flight benefits, for self and parents) to which he would have been entitled but for the company's conduct, and which he lost due to the company's violations of the ADA, prejudgment interest on those losses, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate (including reinstatement).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

67. On or about December 13, 2008, Mr. Rydalch filed a Charge of Discrimination on the basis of disability and gender and retaliation with the Utah Antidiscrimination and Labor Division ("UALD") and the U.S. Equal Employment Opportunity Commission ("EEOC").

68. On or about November 9, 2009, the EEOC issued Mr. Rydalch a Notice of Right to Sue. Mr. Rydalch received this notice on or about November 12, 2009.

69. Mr. Rydalch is filing this civil action and Complaint within the 90-day period specified in the Notice of Right to Sue and, therefore, this filing is timely.

## DAMAGES

WHEREFORE, Mr. Rydalch prays for the following relief:

1. For declaratory relief;

2. For a judgment awarding Mr. Rydalch all appropriate damages for violation of the FMLA;

3. For a judgment awarding Mr. Rydalch the wages and employment benefits, including health insurance, dental insurance, 401 (k) company match dollar-for-dollar, up to 8%, and flight benefits, he would have earned and received had Southwest not discriminated against him on the basis of his disability;

4.     For a judgment awarding Mr. Rydalch all appropriate damages for Southwest Airlines retaliating against him for having engaged in protected activity;

5.     For a judgment awarding Mr. Rydalch damages to compensate him for the emotional distress, mental anguish, pain and suffering and other losses, injuries and damages he has suffered due to Southwest's discrimination against him because of his disability and retaliation;

6.     For reasonable attorney's fees and witness fees and for costs of court;

7.     For such other relief as the Court finds just and equitable.

DATED this 21st day of December, 2009.

       /s/ David J. Holdsworth
David J. Holdsworth
*Attorney for Plaintiff*

## VERIFICATION

Douglas Rydalch, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.

   /s/ Douglas Rydalch
Douglas Rydalch

SUBSCRIBED AND SWORN to before me, a Notary Public, this \_\_\_\_ day of December, 2009.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:   RESIDING AT: _____

_____