IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DOUGLAS RYDALCH, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES, <br><br> Defendant, | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 1:09CV00178CW |

Defendant Southwest Airlines has moved the court to grant summary judgment in its favor on all claims brought against it by Plaintiff Douglas Rydalch. Mr. Rydalch alleges that Southwest violated the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") by terminating his employment because he used FMLA leave. Southwest asserts that it fired Mr. Rydalch because he improperly used FMLA leave to extend his Christmas vacation in 2007. As explained below, Mr. Rydalch has not offered material facts supporting the conclusion that Southwest's reason for terminating his employment was a pretext for discrimination. Southwest's Motion for Summary Judgment on all of Mr. Rydalch's claims is therefore GRANTED.

## BACKGROUND

Southwest hired Mr. Rydalch in 1998 as a reservation sales agent in Salt Lake City, Utah. In 2004, Southwest closed its reservation center in Salt Lake City and Mr. Rydalch transferred to the Houston, Texas office. Mr. Rydalch's family remained in Utah and Mr. Rydalch continued

to reside in Utah during his time off.  Because of his limited company seniority, Mr. Rydalch had a difficult time getting work off for holidays.

In 2004, Mr. Rydalch was involved in an automobile accident that injured his back. Southwest approved Mr. Rydalch to take FMLA leave.  He was allowed to take up to eight days off per month for medical purposes.  Southwest granted Mr. Rydalch all the FMLA leave that he requested.

In 2007, Southwest began to question whether Mr. Rydalch was using his FMLA leave in conjunction with his time off.  On February 6, 2007, a staff administrator who was responsible for coordinating with employees who are unable to attend their work shifts provided a report suggesting this pattern.  According to the report, Mr. Rydalch had used FMLA leave thirty-five times to excuse himself from work on days just before or after his previously scheduled time off. In addition, Mr. Rydalch often had used FMLA leave on important dates and holidays: July 4 (Independence Day), August 8 (Mr. Rydalch's birthday), September 4 (Labor Day and Mr. Rydalch's wedding anniversary), November 23 (Thanksgiving Day), December 25 (Christmas Day), and December 31 (New Year's Eve).

On that same date, Ms. McHenry met with Mr. Rydalch to discuss his use of FMLA leave.  Ms. McHenry explained to Mr. Rydalch Southwest's Attendance Program which states: "Using sick leave or sick pay for a purpose other than that intended constitutes abuse.  Abuse of sick leave or sick pay shall warrant immediate termination." (Southwest Employee Guidebook at 10, Dkt. No. 19-8 at 12).  Ms. McHenry informed her supervisor of Mr. Rydalch's behavior, but did not take any further action against Mr. Rydalch at that time.

When Mr. Rydalch again used FMLA leave on July 4, 2007, Ms. McHenry began investigating Mr. Rydalch's behavior.  Ms. McHenry discovered that Mr. Rydalch had a pattern of taking flights to and from Salt Lake City on the days he requested FMLA leave.  Ms.

McHenry met with Mr. Rydalch again on July 12, 2007 to make sure he understood that Southwest's Attendance Program prohibited the misuse of FMLA leave.

On December 24, 2007, Ms. McHenry learned that Mr. Rydalch had not reported to work and had requested FMLA leave to excuse his absence. Ms. McHenry later discovered Mr. Rydalch had been out of town. When Ms. McHenry reviewed Mr. Rydalch's flight schedule, she learned that Mr. Rydalch had purchased a ticket to fly from Houston to Salt Lake City. The departure date was December 22 and the return date was December 27. The flight had been booked in June 2007. Mr. Rydalch had been scheduled to work December 24, 26 and 27. Mr. Rydalch had made no effort to trade work shifts with other employees. In addition to missing work on December 24, Mr. Rydalch used FMLA leave on December 26 and 27. Soon after this investigation, Ms. McHenry contacted a Southwest supervisor to suggest a hearing on Mr. Rydalch's possible abuse of FMLA leave.

On February 6, 2008, Southwest conducted a hearing to determine whether Mr. Rydalch's use of FMLA leave during the week of Christmas in 2007 violated Southwest's Attendance Program. The hearing followed the procedures set forth in Southwest's collective bargaining agreement. Ms. Boniswa Sundai acted as the Hearing Officer. Ms. Sundai had never met Mr. Rydalch prior to the hearing. At the hearing, Ms. McHenry represented Southwest, and a member of the workers' union represented Mr. Rydalch. Both sides were permitted to present evidence. Ms. McHenry provided Ms. Sundai with a packet of documents ("Hearing Packet") which she had compiled in preparation for the hearing. Ms. McHenry had provided Mr. Rydalch's union representative with a copy of the Hearing Packet several weeks prior to the hearing.

The Hearing Packet showed that Mr. Rydalch's wife had purchased an airline ticket for him to fly to Salt Lake City on December 22 and to return to Houston on December 27. The

ticket had been purchased in June 2007, and a confirmation of the flight had been sent to an email account that Mr. Rydalch used to book other flights. Mr. Rydalch had printed his December 22 boarding pass on December 21 at 7:37 a.m., nearly twenty-four hours prior to when his flight was to depart, which was the earliest an individual could have done so.

The only evidence that the union representative proffered in Mr. Rydalch's defense was Mr. Rydalch's own testimony that he intended to fly back to Houston to work on December 24 by using a nonrevenue ticket, but became ill and unable to fly. Ms. Sundai stated that she discredited Mr. Rydalch's testimony based of the following facts presented to her at the hearing. First, December 24 is one of the most difficult days for employees to obtain a nonrevenue ticket because of heavy travel. Further, Mr. Rydalch did not attempt to change his paid ticket to return to Houston on December 24. Moreover, Mr. Rydalch used FMLA leave on December 27 only after his flight was delayed in Denver and he could not make his scheduled shift on time.

After reviewing evidence and listening to arguments from Southwest and Mr. Rydalch, Ms. Sundai concluded that Mr. Rydalch violated the Attendance Program. She found that he planned in advance to use FMLA leave on December 24, 26, and 27 rather than securing those days off through legitimate means. As a disciplinary action for violating the Attendance Program, Ms. Sundai terminated Mr. Rydalch's employment on February 19, 2008. Mr. Rydalch appealed the decision to Mr. Curt Carey, then-Director of Employee Relations for Southwest. Mr. Carey agreed with Ms. Sundai's conclusion that Mr. Rydalch misused FMLA leave and affirmed her decision to terminate Mr. Rydalch's employment.

## ANALYSIS

I.    **STANDARD FOR SUMMARY JUDGMENT**

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is proper when

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007). In other words, there "must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995). When applying this standard, a court must view the factual record in the light most favorable to the non-movant. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

## II. FMLA RETALIATION

Mr. Rydalch asserts that Southwest violated the FMLA by terminating his employment because of his exercise of FMLA leave. 29 U.S.C. § 2615(a)(2) makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the [FMLA]." Wrongful discharge claims under the FMLA are subject to the traditional burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). For Mr. Rydalch to establish a prima facie case for wrongful termination under the FMLA, he must show that (1) he engaged in a protected activity, (2) the employer took an adverse action, and (3) a casual connection exists between the protected activity and the adverse action. *Id*. If Mr. Rydalch establishes a prima facie case, Southwest must offer a legitimate, non-retaliatory reason for the adverse action. *Id.* If Southwest provides such a reason, Mr. Rydalch must provide evidence from which a jury could find by a preponderance of evidence that the employer's proffered reason is pretextual. *Id.*

Southwest has presented evidence of a legitimate, non-retaliatory reason for the termination of Mr. Rydalch's employment: an honest belief that he violated the company's

Attendance Program. Mr. Rydalch's claim fails because he has not presented evidence from which a reasonable fact-finder could find that this reason was a pretext.

**A.      Southwest's Non-Discriminatory Reason for Firing Mr. Rydalch**

Southwest's reason for firing Mr. Rydalch–its honest belief that he abused FMLA leave–is legitimate and nondiscriminatory. An employer's belief that an employee is misusing FMLA leave provides sufficient justification to terminate his employment if that belief is honest. *Medley v. Polk Co.*, 260 F.3d 1202, 1207 (10th Cir. 2001) ("[A]n employer who discharges an employee honestly believing that the employee . . . is not using FMLA leave for its intended purposes . . . would not be in violation of the FMLA."). *See also Stonum v. U.S. Airways, Inc.*, 83 F.Supp.2d 894, 899-904 (S.D. Ohio 1999) (affirming grant of summary judgment on plaintiff's FMLA claim where employer terminated plaintiff based on evidence that she used FMLA leave for non-qualifying purposes); *Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3rd Cir. 2005) ("Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave."); *Bradsher v. City of Philadelphia Police Dep't*, No. 04-3309, 2007 WL 2850593 (E.D. Pa. Oct.2, 2007) (holding that employer did not violate FMLA by terminating employee for violating employer's sick leave policy). Moreover, FMLA leave cannot be used as a guise to evade an employer's attendance policy. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) ("Bones' request for FMLA leave does not shelter her from the obligation, which is the same as that of any other Honeywell employee, to comply with Honeywell's absence policy."); *Smith v. Diffee Ford-Lincoln-Mercury*, 298 F.3d 955, 960 (10th Cir. 2002) (an employee who requests FMLA leave has no greater rights than an employee who does not request FMLA leave).

In determining whether an employer's belief of employee misconduct was honest, the court examines "the facts as they appear to the person making the decision" without a review of

the "wisdom or fairness" of the decision. *Berry*, 490 F.3d at 1220. An employer's belief that an employee is abusing FMLA leave may be honest even if it turns out to be mistaken. *Medley*, 260 F.3d at 1207. *See also Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1268-69 (10th Cir. 2004) (employer's good faith belief "would not be pretextual even if the belief was later found to be erroneous"). *See also Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997) (when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection); *Moughari v. Publix Super Markets*, 1998 WL 307454 (N.D. Fla) (termination of employment based on manager's conclusion that employee had misused FMLA leave did not violate FMLA regardless of whether manager's conclusion was correct); *and Stonum v. U.S. Airways, Inc.*, 83 F. Supp.2d 894, 903 n. 12 (S.D. Ohio 1999) ("The critical issue is whether the Defendant maintained a good-faith, reasonable belief that [the discharged employee] had abused her FMLA leave, and not whether the investigator did a flawless job.").

Southwest has offered sufficient evidence to show that its belief that Mr. Rydalch abused FMLA leave was honest. Southwest selected an independent decision maker, Ms. Sundai, to review Mr. Rydalch's use of FMLA leave. Ms. Sundai concluded that Mr. Rydalch violated the Attendance Program by using FMLA leave to take an extended Christmas vacation from December 22 through December 27, 2007. She came to this conclusion after reviewing the facts as set out at the hearing and in the Hearing Packet. Ms. Sundai's decision was affirmed by Curt Carey, then-Director of Employee Relations for Southwest. All these facts support the conclusion that Southwest had a legitimate and nondiscriminatory reason for terminating Mr. Rydalch.

B.  **Pretext**

Because Southwest showed a non-discriminatory reason for terminating Mr. Rydalch, the evidentiary burden shifts to Mr. Rydalch to offer facts from which a jury could find pretext. To establish pretext, a plaintiff must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [employer's] proffered reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). *See also Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) ("What is at issue is whether the evidence presented to [the decision maker] was so weak that a rational fact finder could infer that the expressed reason for terminating the Plaintiff must have been pretextual.").

Mr. Rydalch's attempts to establish pretext fail. First, Mr. Rydalch claims that Southwest's reason was a pretext because he did not actually misuse FMLA leave on December 24, 26 and 27. This argument is insufficient because an employer's honest belief can be mistaken. *Medley*, 260 F.3d at 1207. Accordingly, even if Mr. Rydalch did not misuse FMLA as a factual matter, Southwest's honest but mistaken belief otherwise does not establish a pretext.

Mr. Rydalch also tries to establish pretext by arguing that Ms. Sundai drew all inferences of evidence against him at the hearing. He further contends that Mr. Carey did the same. But to show pretext, Mr Rydalch must point to facts supporting a conclusion that Southwest's determination was "unworthy of credence." *Morgan*, 108 F.3d at 1323. He did not do so. First, Mr. Rydalch has not shown facts suggesting that his apparent pattern of misusing FMLA had some compelling explanation other than abuse. At the hearing on this motion, Mr. Rydalch suggested that the pattern was explained by his back condition being worsened by flight and

8

down time in Salt Lake City. Mr. Rydalch, however, did not provide the court with extrinsic evidence of this explanation in connection with this motion. More importantly, the record does not show that Mr. Rydalch presented any such extrinsic evidence to Ms. Sundai during his hearing before her. Without such evidence, Ms. Sundai only had Mr. Rydalch's self-serving testimony. But as Mr. Rydalch conceded, Mr. Rydalch's credibility had been called into question by the fact that he did not request FMLA leave on December 27 until after his return flight to Houston had been delayed in Denver. Moreover, even if Mr. Rydalch had shown some alternative explanation, Southwest's decision is still not unworthy of belief. The existence of alternative, reasonable inferences of evidence does not establish pretext. *See Berry*, 490 F.3d at 1220 (ruling that the wisdom and fairness of an employer's decision does not influence the court's determination of whether the employer's reason for terminating an employee was a pretext).

Mr. Rydalch also argues that his excellent work record suggests that his use of FMLA was the actual reason for his firing. But Mr. Rydalch's good work history alone does not favor either side. That is, while a good work record might suggest that Southwest's decision was centered on FMLA leave, there is no correlation between his good record and whether his use of FMLA was proper or not. Indeed Mr. Rydalch's productive work history makes it less likely that Southwest would use pretext to terminate him. Reason suggests that it would want to retain productive employees. In sum, Mr. Rydalch has not proffered evidence that would reasonably support a finding of pretext. Accordingly, his wrongful termination claim fails.

### III. FMLA INTERFERENCE

Mr. Rydalch asserts that Southwest violated the FMLA by interfering with his ability to take leave. The FMLA makes it unlawful for any covered employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in the [FMLA]." 29 U.S.C.

§ 2615(a)(1). To make a prima facie claim of interference under the FMLA, a plaintiff must establish that (1) he was entitled to FMLA leave, (2) some adverse action by the employer interfered with his right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

Mr. Rydalch fails to establish the third prong of his prima facie case of FMLA interference. Southwest's adverse action was not related to Mr. Rydalch's exercise of FMLA rights. Southwest's decision to terminate Mr. Rydalch's employment was not based on his *proper exercise* of FMLA leave; it was based on his *misuse* of FMLA leave. Mr. Rydalch concedes that Southwest's reason for terminating his employment was its belief that he violated the Attendance Program. Although Mr. Rydalch asserts that the termination of his employment constitutes a form of interference, this argument fails because it conflates his discharge claim with his interference claim. The FMLA does not grant employees the right to miss work whenever they please. *See Bones*, 366 F.3d at 878 ("Bones' request for FMLA leave does not shelter her from the obligation, which is the same as that of any other Honeywell employee, to comply with Honeywell's absence policy."); *Smith*, 298 F.3d at 960 (an employee who requests FMLA leave has no greater rights than an employee who does not request FMLA leave); *and Medley*, 260 F.3d at 1207 ("[A]n employer who discharges an employee honestly believing that the employee ... is not using FMLA leave for its intended purposes ... would not be in violation of the FMLA.").

Moreover, Mr. Rydalch has not provided any evidence that Southwest interfered with his exercise of FMLA leave in any way apart from terminating his employment. Southwest approved all the FMLA leave that he requested. Ms. McHenry, Mr. Rydalch's supervisor, explained the appropriate uses of FMLA leave to him on multiple occasions. Mr. Rydalch

10

admitted that no one at Southwest ever discouraged him from taking FMLA leave or harassed him regarding the leave he took. Accordingly, Mr. Rydalch has not produced any evidence to support his FMLA interference claim.

IV.    ADA DISCRIMINATION

Mr. Rydalch asserts that Southwest violated the ADA by subjecting him to disparate treatment. Disparate treatment means "treating a qualified individual with a disability differently because of that disability." *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). Disparate treatment claims of discrimination under the ADA are subject to the burden-shifting framework of *McDonnell Douglas*. *Davidson,* 337 F.3d at 1189. To establish a prima facie case, Mr. Rydalch must show that (1) he is disabled as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). If Mr. Rydalch satisfies this burden, Southwest must offer a "legitimate nondiscriminatory reason for its employment decision." *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999). If Southwest offers evidence of such a reason, the burden shifts backs to Mr. Rydalch to present evidence "such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief." *Simms v. Oklahoma Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999).

Mr. Rydalch's claim fails because he cannot establish the third prong of a prima facie case for disparate treatment under the ADA. As discussed above, Southwest's decision to terminate his employment was based on its honest belief that he violated the Attendance Program, not on his disability. Southwest's honest belief also constitutes a legitimate, nondiscriminatory reason to overcome Mr. Rydalch's prima facie case. Moreover, as discussed

11

above, Mr. Rydalch did not present any evidence that this reason is pretextual. Thus, Mr. Rydalch's ADA discrimination claim fails.

## V. ADA ACCOMMODATION

Mr. Rydalch also asserts that Southwest violated the ADA by failing to accommodate his disability. Failure to make reasonable accommodations for a disabled worker constitutes discrimination under the ADA unless the employer can "demonstrate that the accommodation would impose undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). The ADA prohibits discrimination which includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee." 42 U.S.C. § 12112(b)(5)(A). To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002); *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995). Then the burden of production shifts to the employer to present evidence of its inability to accommodate. *White*, 45 F.3d at 361. If the employer presents such evidence, the employee has the burden of coming forward with evidence concerning his capabilities and suggestions for possible accommodations to rebut the employer's evidence. *Id.* Whether an accommodation is reasonable under the ADA is a mixed question of law and fact. *Smith*, 298 F.3d at 967.

Mr. Rydalch's claim that Southwest failed to provide reasonable accommodations to his disability fails. Southwest accommodated Mr. Rydalch's disability by approving all the FMLA leave that Mr. Rydalch requested. Mr. Rydalch also does not dispute that Southwest provided him with the following: a special chair which reclined and gave him additional support for his back; a headset that enabled Mr. Rydalch to answer customer calls while standing up or moving

12

around to alleviate pressure on his back; a handicap parking space to minimize distance he needed to walk to the Reservation Center; and an available room where he could lay down and stretch his back and knee.

Mr. Rydalch argues that Southwest's termination of his employment constitutes a failure to reasonably accommodate to his disability. This argument fails. Although 42 U.S.C. § 12111(9) specifies that reasonable accommodations may include "modified work schedules," the ADA does not give employees who are disabled the right to be absent from work under the guise of FMLA leave. *See Matthews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001) ("The idea of accommodation is to enable an employee to perform the essential functions of her job; an employer is not required to accommodate a disable worker by modifying or eliminating an essential function of the job."). The ADA does not prohibit employers from disciplining its employees for violations of the company's policies. *See Mason*, 357 F.3d at 1122 ("In cases arising under the ADA, [the court] does not sit as a super personnel department that second guesses the employers' business judgments."). Southwest had an honest belief that Mr. Rydalch misused FMLA leave. Mr. Rydalch produces no evidence to suggest that the termination of his employment was the result of anything other than his violation of the Attendance Program. Thus, Mr. Rydalch's ADA claim for lack of reasonable accommodation fails.

## VI.     ADA RETALIATION

Mr. Rydalch asserts that Southwest's decision to terminate his employment was unlawful retaliation against him on the basis of his disability. 42 U.S.C. § 12203(b) states that an employer may not "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of any right granted or protected by the [ADA]." ADA retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas*. *Anderson v. Coors Brewing Co.*,

181 F.3d 1171, 1178 (10th Cir. 1999). To establish a prima facie case of retaliation under the ADA, Mr. Rydalch must establish the following elements: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the employee's protected activity and the employer's adverse action. *See Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001). If Mr. Rydalch succeeds in establishing these elements, Southwest must articulate a legitimate, nonretaliatory reason for the adverse action. *Id.* If Southwest satisfies this burden, Mr. Rydalch must produce sufficient evidence to prove that the proffered reason for termination is a pretext for a retaliatory motive. *Id.*

Assuming that Mr. Rydalch can establish the first two prongs of the prima facie case, his claim fails on the third prong. That is, as already discussed, the cause of Mr. Rydalch's termination was Southwest's an honest belief that he violated the Attendance Program. Mr. Rydalch is unable to produce evidence to support a reasonable fact-finder's inference that the proffered reason for his termination was actually caused by his engaging in any activity protected by the ADA.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS Southwest's Motion for Summary Judgment (Dkt. No. 17) and judgment in favor of Southwest on all of Mr. Rydalch's claims is granted.

SO ORDERED this 3rd day of August, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge